Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| HACIENDA CANDELERO, INC.<br><br>Demandante-Recurrida<br><br>VS.<br><br>PALMAS DEL MAR PROPERTIES, INC.; FULANO DE TAL<br><br>Demandado-Peticionario | KLCE202500396 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm. HU2024CV00636<br><br>Sala: 208<br><br>Sobre: INCUMPLIMIENTO DE CONTRATO; DAÑOS Y PERJUICIOS |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.[1]

Cruz Hiraldo, Juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de julio de 2025.

Comparece ante nos Palmas del Mar Properties, Inc. (en adelante, Palmas del Mar o parte peticionaria) mediante el presente recurso de *certiorari* y nos invita a revocar una *Resolución* emitida el 12 de marzo de 2025, y notificada el 14 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Humacao (en adelante, TPI).[2] Allí, el foro primario declaró *No Ha Lugar* la solicitud de sentencia sumaria de la parte peticionaria para que desestimara la *Demanda* presentada en su contra por Hacienda Candelero, Inc. (en adelante, Candelero o parte recurrida) por estar prescrita.

Examinado el recurso de autos, así como la totalidad del expediente ante nos, se expide el auto de *certiorari* solicitado y *confirmamos* la Resolución.

---

[1] Mediante la OATA-2025-070 del 9 de mayo de 2025, se designó a la Hon. Gloria L. Lebrón Nieves para entender y votar en el caso de epígrafe en sustitución del Hon. Abelardo Bermúdez Torres.
[2] Apéndice 45 de la *Petición*, págs. 467-479. Entrada SUMAC 49.

Número Identificador

SEN2025 _____

**I.**

El presente caso tiene su génesis el 9 de mayo de 2024, cuando la parte recurrida presentó una *Demanda* en contra de Palmas del Mar por incumplimiento de contrato y daños y perjuicios.[3] En esencia, arguyó que, el 9 de marzo de 2000, suscribió un acuerdo denominado *Operating Agreement* con la parte recurrida con el fin de pactar que ésta operara como un centro ecuestre una propiedad que le vendió. Ello siempre y cuando la parte peticionaria cumpliera con ciertas obligaciones que incluían hacer disponibles dos (2) senderos ecuestres, libre de restricciones. Adujo que, posteriormente, Palmas del Mar cedió el control y la titularidad de predios por donde transcurrían los senderos, sin asegurar que Candelero continuara disfrutando de éstos, conforme al pacto suscrito. Por consiguiente, sostuvo que la parte peticionaria incumplió el acuerdo y ello provocó que la parte recurrida sufriera pérdidas económicas.

El 23 de julio de 2024, Palmas del Mar presentó una *Moción de Desestimación bajo la Regla 10.2 de Procedimiento Civil*.[4] En ésta, sostuvo que, de su faz, las alegaciones esbozadas en la demanda no eran suficientes para sostener un reclamo que justificara la concesión de un remedio y que la causa de acción estaba prescrita. Sobre esto, arguyó que el acuerdo suscrito entre las partes constituía un contrato mercantil, por lo que la ley aplicable a la controversia era el Código de Comercio de Puerto Rico de 1932, *infra* (en adelante, Código de Comercio), que establece un plazo prescriptivo de cinco (5) años. Específicamente, adujo que, por cuanto la alegación de la demanda era que la parte peticionaria nunca cumplió con sus obligaciones desde mayo de 2000, la causa de acción ya había prescrito.

---

[3] Apéndice 1 de la *Petición*, págs. 1-6; Entrada 1 SUMAC.
[4] Apéndice 5 de la *Petición*, págs. 17-45; Entrada 6 SUMAC.

El 15 de agosto de 2024, Candelero presentó una *Moción Notificando Enmienda a la Demanda Conforme a la Regla 13.1 de Procedimiento Civil*.[5] En la demanda enmendada, alegó, entre otras cosas, que no adquirió la propiedad con la intención de venderla y que, según el *Operating Agreement*, se entiende que una de las partes está en incumplimiento cuando una le cursa a la otra una notificación para que corrija el incumplimiento, y la parte notificada no hace gestiones para corregirlo dentro de los siguientes diez (10) días. Indicó que, el 23 de enero de 2024, dicha notificación le fue cursada a Palmas del Mar a través de una carta, y ésta se mantuvo en incumplimiento.

El 19 de agosto de 2024, el TPI dictó y notificó una *Orden* en la que declaró *No Ha Lugar* la solicitud de desestimación y resolvió que las alegaciones de la demanda eran suficientes en esa etapa de los procedimientos.[6]

Insatisfecha, la parte peticionaria presentó una *Moción de Reconsideración*.[7] Allí, reiteró que ambas partes eran comerciantes y que la relación jurídica entre ambas era de naturaleza mercantil, regida por el Código de Comercio, bajo el cual la reclamación se encontraba prescrita. Asimismo, adujo que la demanda enmendada era igualmente insuficiente como la original para sostener un reclamo.

En respuesta, el 17 de septiembre de 2024, la parte recurrida presentó una *Oposición a "Moción de Reconsideración."*[8] En ésta, subrayó que el Código de Comercio era inaplicable ya que, si bien las partes podían considerarse comerciantes, la compra de la propiedad no se hizo con el fin de revenderse, razón por la cual el acuerdo suscrito no era uno mercantil sino civil. Asimismo, aun si

---

[5] Apéndice 7 de la *Petición*, págs. 47-76. Entrada 8 SUMAC.
[6] Apéndice 10 de la *Petición*, pág. 80. Entrada 11 SUMAC.
[7] Apéndice 11 de la *Petición*, págs. 81-89; Entrada 12 SUMAC.
[8] Apéndice 12 de la *Petición*, págs. 91-103; Entrada 14 SUMAC.

el *Operating Agreement* fuera mercantil, la causa de acción no había prescrito pues no había transcurrido un año desde el alegado incumplimiento de la parte peticionaria. En adición, adujo que el término prescriptivo aplicable era el provisto por el Artículo 1864 del Código Civil de 1930, 31 LPRA ant. sec. 5294,[9] que establece un término de prescripción de quince (15) años para las acciones personales que no tienen señalado un plazo prescriptivo especial.

Ante ello, el 23 de septiembre de 2024, Palmas del Mar presentó una *Réplica a Oposición a Moción de Reconsideración*.[10] Resaltó que Candelero admitió que las partes eran comerciantes y reafirmó que el propósito del acuerdo era uno comercial, por lo que se cumplían los requisitos necesarios para que fuera de aplicación las disposiciones del Código de Comercio.

El 15 de octubre de 2024, y notificada el 17 de octubre de 2024, el TPI dictó una *Resolución*.[11] En el referido dictamen, el foro primario denegó la solicitud de reconsideración de la parte peticionaria y resolvió que, toda vez que el acuerdo se firmó durante la vigencia del Código Civil de 1930, el término prescriptivo aplicable era el de quince (15) años. No obstante, sostuvo que, aun si el plazo de prescripción fuera el de cinco (5) años provisto por el Código de Comercio, la demanda no estaba prescrita pues, conforme a las disposiciones del *Operating Agreement*, la parte recurrida notificó el alegado incumplimiento a la parte peticionaria el 23 de enero de 2024 y ésta no atendió la notificación dentro de los diez (10) días que establece el acuerdo. Siendo así, a partir del antedicho plazo, el término prescriptivo comenzó a transcurrir.

---

[9] El Código Civil de 1930 fue derogado al aprobarse la Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*, conocida como el "Código Civil de 2020," el cual estableció en su Artículo 1812 que "[l]os actos y contratos celebrados bajo el régimen de la legislación anterior y que son válidos con arreglo a ella, surten todos sus efectos según la misma, con las limitaciones establecidas en este Código." 31 LPRA sec. 11717. En el recurso ante nos son de aplicación las disposiciones del derogado Código Civil de 1930 ya que el *Operating Agreement* fue suscrito en el año 2000.
[10] Apéndice 15 de la *Petición*, págs. 107-110; Entrada 17 SUMAC.
[11] Apéndice 17 de la *Petición*, págs. 112-117; Entrada 19 SUMAC.

Tras varios incidentes procesales, el 4 de diciembre de 2024, Candelero presentó una *Solicitud de Sentencia Sumaria Parcial*.[12] Aseveró la inexistencia de hechos en controversia sobre el alegado incumplimiento contractual de parte de Palmas del Mar. En apoyo a su solicitud dispositiva, anejó: (1) el *Operating Agreement*; (2) carta del 9 de marzo de 2000 enviada por Palmas del Mar a Candelero en la que se expresó que ésta última comenzó a utilizar uno de los senderos ecuestres, denominado Sendero A, mientras la primera cumplía con delinear el denominado Sendero B; (3) declaración jurada del Dr. José L. Benítez Aponte, en representación de Candelero; (4) carta del 23 de enero de 2024 cursada por la parte recurrida a Palmas del Mar para señalar su incumplimiento y exigir su atención a éste; y (5) carta del 31 de enero de 2024 enviada por la parte peticionaria a Candelero en la que niega el incumplimiento señalado.

En su escrito, la parte recurrida esgrimió que no estaba en controversia el hecho de que entre las partes se suscribió el *Operating Agreement*, el cual constituye la ley entre las partes. Asimismo, que, conforme a las disposiciones del referido acuerdo, tampoco había controversia sobre el incumplimiento por parte de Palmas del Mar.

En respuesta, el 10 de enero de 2025, la parte peticionaria presentó una *Oposición a "Solicitud de Sentencia Sumaria Parcial" de la Demandante y Moción de Sentencia Sumaria a Favor de PDMPI*.[13]

Sostuvo que la petición de sentencia sumaria de la parte recurrida era vaga e insuficiente y los documentos que la acompañaron no constituían prueba admisible de que Palmas del Mar incumplió con el acuerdo. Acompañó su escrito con los siguientes anejos: (1) declaración jurada de M. Emily Madison,

---

[12] Apéndice 24 de la *Petición*, págs. 142-214; Entrada 26 SUMAC.
[13] Apéndice 27 de la *Petición*, págs. 220-366; Entrada 31 SUMAC.

principal oficial financiera de Palmas del Mar; (2) *Operating Agreement*; (3) escritura pública número cuatro (4) sobre segregación, liberación de hipoteca, compraventa, constitución de servidumbre, subordinación, constitución de condiciones restrictivas, derecho de tanteo y retracto, suscrita por las partes y MAXXAM Group, Inc.; (4) carta de 17 de abril de 2014 enviada por Palmas del Mar a Candelero; (5) correo electrónico de 13 de octubre de 2014, enviado por el señor Jaime Morgan, en representación de Palmas del Mar, al Dr. Benítez Aponte, en representación de Candelero; (6) carta de 7 de diciembre de 2015 enviada por la parte peticionaria a la parte recurrida; (7) carta de 10 de mayo de 2017 cursada por Palmas del Mar a Candelero; (8) fotografías del Centro Ecuestre y de una publicación en redes sociales sobre una actividad en la propiedad; (9) certificado de enmienda al certificado de incorporación e información de agente residente de Candelero en el Departamento de Estado; (10) minuta del asiento de presentación en el Registro de la Propiedad, Sección de Humacao; (11) carta de 8 de marzo de 2004 enviada por Candelero a Palmas del Mar; (12) carta de 13 de enero de 2011 enviada por la parte recurrida a la parte peticionaria; (13) correo electrónico de 1 de abril de 2014 enviado por Candelero a Palmas del Mar; (14) carta de 4 de septiembre de 2015 enviada por los abogados de Candelero a Palmas del Mar; (15) correo electrónico de 20 de septiembre de 2016 enviado por el Dr. Benítez, en representación de Candelero, al señor David Suson, representante de MAXXAM; (16) correo electrónico de 27 de septiembre de 2016 enviado por el señor Suson al Dr. Benítez, representante de Candelero; y, (17) carta de 16 de marzo de 2020 enviada por Candelero a Palmas del Mar.

Asimismo, solicitó que se dictara sentencia por la vía sumaria y se desestimara en su totalidad la demanda presentada. Ello por cuanto reiteró que no se encontraba en incumplimiento del acuerdo

y reafirmó que la causa de acción se encontraba prescrita, de conformidad con el Código de Comercio.

En el ínterin, el 30 de enero de 2025, el foro *a quo* emitió y notificó una *Resolución* en la que denegó la solicitud de sentencia sumaria presentada por Candelero.[14]

Así las cosas, el 13 de febrero de 2025, y en respuesta al petitorio de Palmas del Mar, Candelero presentó una *Oposición a SOLICITUD DE SENTENCIA SUMARIA*.[15] Allí, esgrimió que la parte peticionaria pretendía relitigar el asunto sobre la alegada prescripción de la causa de acción, el cual ya había sido resuelto por el TPI en su *Resolución* del 15 de octubre de 2024, que fue notificada el 17 de octubre de 2024. Adujo que el referido dictamen advino final y firme, toda vez que, Palmas del Mar no recurrió de ella, por lo que constituyó la ley del caso. Asimismo, indicó que, con lo anterior ya resuelto por el foro primario, a este solo le restaba resolver si se incumplió con el acuerdo contractual.

Señaló, además, que la parte peticionaria no solicitaba que se dictara sentencia sumaria a su favor porque tuviera prueba de que ha cumplido con el *Operating Agreement*, sino que, en ausencia de prueba, su fundamento era el asunto de prescripción.

El 12 de marzo de 2025, y notificada el 14 de marzo de 2025, el foro de instancia dictó la *Resolución* objeto del presente recurso.[16] A través del dictamen, denegó la solicitud de sentencia sumaria presentada por Palmas del Mar. Al respecto, hizo las siguientes determinaciones de hechos incontrovertidos:

1. El 9 de marzo de 2000, Hacienda Candelero y PDMPI suscribieron un acuerdo, denominado "Operating Agreement" con el objetivo de que Hacienda Candelero operara el Centro Ecuestre del complejo Palmas del Mar ubicado en el municipio de Humacao.

2. En específico, la Sección 2 del Operating Agreement establece lo siguiente: Agreement to Operate.

---

[14] Apéndice 36 de la *Petición*, págs. 382-392; Entrada 40 SUMAC.
[15] Apéndice 39 de la *Petición*, págs. 396-456.
[16] Apéndice 45 de la *Petición*, págs. 467-479; Entrada SUMAC 49.

Commencing on the date hereof, Operator hereby agrees to operate the Equestrian Center and to provide the Services to Patrons in a manner commensurate with a high quality horseback riding facility.

3. En cuanto al uso, ubicación y mantenimiento de los senderos, Hacienda Candelero y PDMPI acordaron lo siguiente:

> Grant of license to use Trail. Palmas and Operator have agreed on the location of a trail to be used by Operator for trail rides. The initial trail to be used by Operator is referred to in Exhibit B as the Internal Horse Trail and is marked in red ("Trail A"). In addition, Palmas shall select an additional trail ("Trail B") which shall provide access to the "Goyines" Sector of El Morro at the Buena Vista Ward of Humacao. Operator shall be entitled to commence using Trail B in accordance with the terms hereof immediately after the specific location of Trial B is delineated by Palmas and evidence by a drawing delivered to Operator, which shall become a part of this Agreement. Palmas shall be responsible for clearing and preparing Trail A and Trail B before Operator commences using such trails, and immediately thereupon Operator shall be responsible for the maintenance of such trails. Palmas may change the routing of Trail A and Trail B at any time, and from time to time, upon fifteen (15) days prior written notice to Operator provided any rerouting of Trail B shall always lead to the "Goyines" Sector. Such trails, as changed from time to time under this Agreement, are hereinafter collectively referred to as the "trails". So long as Operator is not in default of its obligations under this Agreement, Palmas grants to Operator a non-exclusive license to use the Trail.

4. Bajo la Sección 8 del Operating Agreement, Hacienda Candelero es responsable de proveer mantenimiento a los senderos que utiliza y se obligó a mantener el Centro Ecuestre limpio, ordenado y seguro a su costo, incluyendo el reparar daños que sufrieran los senderos.

5. 6. [sic] En la Sección 12 del Operating Agreement se estableció que: Casualty. Palmas shall not be liable to Operator for any loss of business, work stoppage, labor disputes or destruction of property resulting from fires, windstorms, riots, thefts, or accidents in any portion of the Resort or any other casualty, including without limitation, events that might impair, limit or prevent Operator's use of the Area.

6. Además, en la Sección 16 del Operating Agreement se estableció que:

> Material Breach by Palmas, through its fault, intentionally denies Operator use of the Trial or a reasonable alternative, Palmas shall, at its option, either:

> (i)      remove the restrictions and restrictive covenants limiting the use of the

property to an Equestrian Center (the "Restrictions") and Operator shall have the right to sell the Property and all improvements thereon to anyone at any time, free of Restrictions, or

(ii)    (ii) [sic] purchase the Property and all then existing improvements for the fair market value thereof, valued immediately prior to the denial of the use of the Trial according to the possible use of the Property as a residential community development similar to the one described in Section 17 hereof.

If the Property is sold to a third party or to Palmas, under (i) or (ii) above, This Agreement shall terminate immediately and Operator must immediately cease use of the Trail. This section 16 is intended to apply, where Palmas, for its own business purposes, decides Palmas would rather use the Trail for some other purpose and does not provide a reasonable alternative, and shall not apply, for example, where the Trail cannot be used for legal reasons, including without limitation the effect of existing applicable laws, or a change in applicable laws or other government action.

7.  8. [sic] Hacienda Candelero compareció en el Operating Agreement representada por su presidente, el Sr. José L. Benítez Aponte ("señor Benítez").

8.  Conforme el Registro de Corporaciones y Otras Personas Jurídicas del Departamento de Estado del Estado Libre Asociado de Puerto Rico, el señor Benítez también es el agente residente de Hacienda Candelero. Además, el correo electrónico del agente residente era cheguiben@hotmail.com, hasta el 13 de noviembre de 2024, fecha en que el señor Benítez solicitó una enmienda a los efectos de cambiar su correo electrónico a darlenebajandas@hotmail.com.

9.  El 9 de marzo de 2020, Hacienda Candelero y PDMPI otorgaron la Escritura Núm. 4 ante la notaria Vanessa Aymerich Conde, intitulada "Deed of Segregation, Release of Mortgage, Purchase and Sale, Constitution of Easement, Subordination of Mortgage, Constitution of Restrictive Covenants, Constitution of Right of Repurchase, and Constitution of Right of First Refusal (Equestrian Center)" (en adelante "Escritura Núm. 4").

10. El 3 de abril de 2020, la Escritura Núm. 4 fue presentada en el Registro de la Propiedad, Sección de Humacao, para su inscripción.

11. Mediante la Escritura Núm. 4, Hacienda Candelero, entre otras cosas, compró a PDMPI una parcela localizada en el municipio de Humacao.

12. En la cláusula cinco (5) de la Escritura Núm. 4 se establece lo siguiente sobre la compraventa, en lo pertinente:

-------------PURCHASE AND SALE---------------
FIFTH. Sale of the Property. Seller hereby sells to purchaser and purchaser hereby purchases from Seller the Property as described in Article THIRD herein above) and all improvements, structures, buildings, appurtenances, rights, easements and servitudes pertaining thereto, without any limitations or reservations whatsoever, subject to the following conditions:-------------------------- ---One: . . . ---Two. Purchaser acknowledges that, except as stated hereinafter, neither Seller nor any agent, officer, employee, or representative of Seller has made any representations whatsoever regarding the subject matter of this deed. Purchaser hereby agrees that to the maximum extent permitted by applicable law, except for the warranty of title provided by the Civil Code of Puerto Rico, this sale is made and will be made without recourse on Seller, or representation, covenant or warranty of any kind (whether express, implied or statutory) by Seller. The Transfer and Conveyance of the Property by Seller to Purchaser is on an "as is and where is" basis, with all faults, and without any representations or warranties, all of which Seller hereby disclaims. Purchaser hereby knowingly waives compliance by Seller with the warranty against defects imposed upon sellers of real property by the Civil Code of Puerto Rico. No warranty of representation, express or implied, is made by Seller, as to (a) fitness for any particular purpose, (b) merchantability, (c) design, (d) quality, (e) condition, (f) operation, (g) compliance with specifications, (h) absence of latent defects, (i) condition or absence of hazardous or toxic substances, (j) absence of faults, (k) floodings, (l) wetlands, (m) utilities, or (n) compliance with laws and regulations (including without limitation, those related to health, safety and environment). Purchaser acknowledges that (i) Purchaser executes this Deed having made and relied upon its own investigation of the physical, environmental, economic use, compliance, and legal condition of the property. . .

13. En la Escritura Núm. 4 también se expuso que Hacienda Candelero ejecutaría el Operating Agreement y sería la responsable de solicitar, obtener y pagar todos los permisos necesarios para la construcción y operación del Centro Ecuestre.

14. En cuanto a la condición restrictiva de uso que grava la propiedad que compró Hacienda Candelero, la Escritura Núm. 4 dispone lo siguiente:

NINTH: Restrictive Covenants.

-----One. Use Restrictions. The Property shall be restricted solely for use as an equestrian center, for the use and benefit of the public, residents of the resort, Palmas del Mar Country Club members and guests of the facilities operated at the Resort. The Equestrian Center shall be operated in accordance with the terms and conditions of the Operating Agreement.

15. El 8 de marzo de 2004, Hacienda Candelero envió a PDMPI una carta en la que expresó el problema de no tener un sendero permanente hacia el sector los "Goyines".

16. Hacienda Candelero era la parte únicamente responsable de solicitar, obtener y pagar todos los permisos necesarios para la construcción y operación del Centro Ecuestre.

17. El 13 de enero de 2011, Hacienda Candelero remitió una comunicación a PDMPI en la que alegó que la mayoría de los senderos provistos por PDMPI ya no estaban en propiedad de PDMPI, otros dos senderos no habían sido entregados y otros no eran aceptables debido a que el terreno no era seguro.

18. El 1 de abril de 2014, el señor Benítez, presidente de Hacienda Candelero, remitió una comunicación a PDMPI. En dicha comunicación, Hacienda Candelero alegó que le había remitido a PDMPI una carta certificada de 6 de diciembre de 2010 sobre el alegado incumplimiento de PDMPI de proveer dos "riding trails" y solicitándole que comprara la propiedad o levantara la condición restrictiva de uso.

19. El 13 de octubre de 2014, PDMPI por conducto del Sr. Jaime Morgan, notificó a Hacienda Candelero, por conducto del señor Benítez, una comunicación mediante la cual alegó confirmar los asuntos discutidos en una reunión que sostuvieron el 24 de septiembre de 2014. La misma fue recogida en una minuta por correo electrónico.

20. Hacienda Candelero expresó que tenía derecho a que se levantasen las restricciones bajo el Operating Agreement, con lo cual PDMPI no estaba de acuerdo y le solicit[ó] a Hacienda Candelero que le presentara una propuesta escrita para poder compartirla con la gerencia.

21. El 13 de octubre de 2014, el señor Benítez acusó recibo de la minuta de la reunión sostenida por las partes el 24 de septiembre de 2014, confirmando que remitiría su propuesta y discutiría el asunto con sus abogados.

22. En su correo electrónico del 13 de octubre de 2014, el señor Benítez no negó, controvirtió, ni solicitó la corrección de los temas y posiciones de las partes que se

discutieron en la reunión y resumió el señor Morgan en el correo electrónico que le envió 13 de octubre de 2014.

23. El 4 de septiembre de 2015, Hacienda Candelero, por conducto de sus representantes legales, remitió una carta a PDMPI en la cual expuso que PMDPI no había provisto [sic] los senderos, y que el sendero que Hacienda Candelero había estado utilizando había advenido inutilizable.

24. El 7 de diciembre de 2015, PDMPI, por conducto de sus representantes legales, remitió una carta a Hacienda Candelero. En dicha carta PDMPI reitera la controversia sobre los senderos alternos que alega ha propuesto.

25. El 20 de septiembre de 2016, Hacienda Candelero solicitó a PMDPI una propuesta formal para negociar el término de vigencia de las condiciones restrictivas.

26. El 27 de septiembre de 2016, PMDPI remitió a Hacienda Candelero un correo electrónico con un resumen de los asuntos que se habían estado discutiendo, incluyendo una propuesta adicional para los asuntos planteados por Hacienda Candelero. En dicha comunicación y de darse las condiciones allí establecidas, PDMPI propuso levantar las condiciones restrictivas luego de un plazo de diez (10) años.

27. El 10 de mayo de 2017, PDMPI remitió otra carta a Hacienda Candelero en donde se comunica la controversia existente de los senderos.

28. El 16 de marzo de 2020, Hacienda Candelero remitió otra carta a PDMPI con las mismas alegaciones de las otras comunicaciones ya intercambiadas entre ellos.

29. El 24 de enero de 2024, Hacienda Candelero por conducto de nuevos representantes legales, remitió una carta a PDMPI. Hacienda Candelero expuso en esa carta el alegado incumplimiento de Palmas del Mar y le proveyó el término de diez (10) días para que remediara el mismo, según dispone la Sección 19 del Operating Agreement.

30. El 31 de agosto de 2024, PDMPI, por conducto de sus abogados, contestó la carta del Lcdo. Rosario alegando que Hacienda Candelero ha operado el Centro Ecuestre utilizando los senderos alegadamente provistos por PDMPI, sosteniendo además el alegado cumplimiento de PMDPI con el Operating Agreement.

31. Según el expediente judicial Hacienda Candelero presentó una declaración jurada en donde sostiene que ninguna de las anteriores comunicaciones constituyó una notificación de incumplimiento contractual.

32. Según la anterior declaración jurada la notificación de incumplimiento contractual se realizó el 23 de enero de 2024.

33. Hacienda Candelero presentó una declaración jurada en donde afirma que PDMI no cumplió con su obligación de delinear el sendero ecuestre B.

34. PMDI presentó una declaración jurada en donde afirma que le proveyó varias alternativas a Hacienda Candelero para la delineación de los senderos, pero alega que Hacienda Candelero no aceptó ninguna de las alternativas ofrecidas.[17]

No obstante, el foro de instancia señaló los siguientes hechos en controversia:

1. Existe controversia sobre si Palmas del Mar estaba ofreciendo una ruta a Marbella Club, la cual no cumplía con la sección 3.01 del Operating Agreement, que establece que el Sendero B tiene que llegar a Sector Goyines.

2. Está en controversia si la anterior propuesta era viable.

3. Existe controversia sobre si Hacienda Candelero se obligó a obtener, a su entera responsabilidad y costo, todas las licencias y permisos necesarios para proveer los servicios del Centro Ecuestre conforme la Sección 5 (f) del Operating Agreement o si por el contrario era obligación compartida de de PDMI Y de Hacienda Candelero cumplir con lo estipulado en esta sección del contrato.

4. Existe controversia sobre si PDMPI intencionalmente le denegó a Hacienda Candelero el uso de los senderos o de alternativas razonables establecidas en el acuerdo en controversia.

5. Hay controversia sobre si Hacienda Candelero se ha mantenido ininterrumpidamente operando el Centro Ecuestre a través de los senderos provistos por PDMPI.

6. Está en controversia si PDMPI ha procurado y ofrecido senderos alternos a Hacienda Candelero y esta lo ha rechazó en detrimento a lo establecido en el Operating Agreement.

7. Existe controversia sobre si en el año 2017, Hacienda Candelero tuvo que dejar de usar el negocio de alquiler y viajes de caballo porque Palmas del Mar no tenía las rutas acordadas disponibles.

8. Existe controversia sobre si Palmas del Mar no ha cumplido con su obligación de delinear el sendero ecuestre B.

9. Existe controversia sobre si luego de años de uso de los senderos ecuestres A y el Temporary Trail, Palmas del Mar perdió el control y titularidad de parte de los predios donde transcurren partes vitales de los senderos, asumiendo control un nuevo titular, al cual el Operating Agreement no le obliga.

---

[17] Apéndice 45 de la *Petición*, págs. 469-474.

10. Hay controversia sobre si Hacienda Candelero ha dejado de operar el Centro Ecuestre por causa de PDMPI.

11. Está en controversia si al presente el Centro Ecuestre está ofreciendo cabalgatas al público.

12. Existe controversia sobre si parte del Sendero A se encuentra inoperante por encontrarse inundado sin que haya sido reparado por años por parte de Palmas del Mar.

13. Hay controversia sobre si Hacienda Candelero se ha visto limitado su negocio y ha tenido que exigir a sus operadores incurrir en gastos no contemplados en el Operating Agreement al tener que alquilar parte de los predios por donde transcurren los senderos y que se encuentran en manos de otros titulares que no son Palmas del Mar.

14. Hay controversia sobre si Palmas del Mar incumplió con la Sección 3.3(c) del Operating Agreement al ceder las propiedades bajo su control o permitir la ejecución de estas, sin alegadamente asegurarse que Hacienda Candelero continuara disfrutando del uso de los senderos ecuestres según contemplados en el Operating Agreement.

15. Está en controversia si Palmas del Mar notificó, conforme requiere la Sección 3 del Operating Agreement, alguna reubicación de los senderos acordados en el Operating Agreement.[18]

Así las cosas, y no conforme, la parte peticionaria acude ante nos mediante *Petición de Certiorari* y aduce el siguiente señalamiento de error:

> **ERRÓ Y ABUS[Ó] DE SU DISCRE[C]IÓN EL TRIBUNAL DE PRIMERA INSTANCIA [Y] ACTUÓ CONTRARIO A DERECHO, AL DENEGAR LA MOCIÓN DE SENTENCIA SUMARIA DE PDMPI; TODA VEZ QUE EL OPERATING AGREEMENT ES UN CONTRATO MERCANTIL Y LA CAUSA DE ACCIÓN DE HACIENDA CANDELERO ESTÁ CADUCA [SIC] EN VIRTUD DEL ARTÍCULO 940 DEL CÓDIGO DE COMERCIO, 10 L.P.R.A. SEC. 1902.**

El 24 de abril de 2025, la parte recurrida compareció mediante *Oposisición [sic] a la Expedición de Auto de Certiorari.* Con el beneficio de la comparecencia de las partes, procedemos a resolver, no sin antes delimitar la normativa jurídica aplicable.

## II.

### A. *Certiorari*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar

---

[18] Apéndice 45 de la *Petición,* págs. 474-475.

las determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al*, 212 DPR 194, 207 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1., establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 709 (2019). En lo pertinente, la Regla 52.1, *supra*, dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o **de la denegatoria de una moción de carácter dispositivo**. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

> 32 LPRA Ap. V, R. 52.1 (énfasis nuestro).

La discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023); *Mun. Caguas v. JRO Construction*, 201 DPR 703, 712 (2019); *IG Builders et al. v. BBVAPR*, *supra*, pág. 338. Así pues, la discreción judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros. *Id.* pág. 338. Cónsono con lo anterior,

la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari*. *Torres González v. Zaragoza Meléndez, supra*; *Rivera et al. v. Arcos Dorados et al. supra*; *Mun. Caguas v. JRO Construction, supra,* pág. 709; *McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. v. BBVAPR, supra,* págs. 338-339. La referida regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz De León*, 176 DPR 913, 918 (2009). Es por ello por lo que, los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado. *Id.* pág. 918. Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1)

actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al., supra; Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).

### B. Sentencia Sumaria

La sentencia sumaria es un mecanismo procesal que tiene como propósito la solución, justa, rápida y económica de los litigios civiles que no contengan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Segarra Rivera v. Int'l Shipping Agency, Inc.,* 208 DPR 964, 979 (2022). Como es sabido, en nuestro ordenamiento jurídico, el mecanismo de la sentencia sumaria está regido por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal. *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 224 (2015). La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio. *Birriel Colón v. Econo y otro,* 213 DPR 80, 90 (2023); González *Meléndez v. Mun. San Juan,* 212 DPR 601, 610 (2023); *Segarra Rivera v. Int'l Shipping et al., supra,* pág. 979; *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

La Regla 36.1 de Procedimiento Civil establece que las partes podrán presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada. 32 LPRA Ap. V, R. 36.1. La sentencia sumaria es una excepción al juicio mediante

testimonios vivos frente al juzgador de los hechos. *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 430 (2013). La parte que solicita la sentencia sumaria tiene la responsabilidad de demostrar de manera clara que el promovido no puede prevalecer mediante ningún supuesto de hechos y que el tribunal cuenta con la verdad sobre todos los hechos necesarios para resolver la controversia ante su consideración. *Id.* pág. 473

Por su parte, el Tribunal tiene discreción para conceder o no la sentencia sumaria, **ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley**. *Roig Com. Bank v. Rosario Cirino*, 126 DPR 613, 617 (1990). Es por lo anterior, que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador. *Segarra Rivera v. Int'l Shipping Agency, Inc.*, *supra*, pág. 980. No obstante, el Tribunal puede utilizar el mecanismo de sentencia sumaria, aun cuando hay elementos subjetivos, si la evidencia que será considerada en la solicitud surge que no existe controversia en cuanto a los hechos materiales. *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993-994 (2024); *SLG Zapata-Rivera v. JF Montalvo*, *supra*, pág. 442-443.

Ahora bien, antes de utilizar el mecanismo de sentencia sumaria, el Tribunal debe evaluar lo siguiente:

> (1) [A]nalizará los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos.
>
> *Management Administration Services, Corp v. ELA*, 152 DPR 599, 611 (2000).

En síntesis, el Tribunal de Primera Instancia no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no proceda". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, 208 DPR 310, 335 (2021).

Asimismo, si la otra parte desea derrotar una moción de sentencia sumaria, deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. *PFZ Props, Inc v Gen, Acc Ins. Co.*, 136 DPR 881, 912-913 (1994). No obstante, el solo hecho de no presentar evidencia que controvierta la presentada por el promovente, no implica necesariamente que procede la sentencia sumaria. *Id.*, pág. 913. Los jueces no están constreñidos por los hechos o documentos evidenciarios que se aduzcan en la solicitud de sentencia sumaria, sino que tienen el deber de considerar todos los documentos en autos, incluso aquella que no haya formado parte de la solicitud, sin dirimir cuestiones de credibilidad. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004).

En cuanto al estándar de revisión aplicable al Tribunal de Apelaciones al momento de revisar la determinación del foro primario de conceder o denegar la sentencia sumaria, el foro intermedio apelativo solo puede:

> (1) [C]onsiderar los documentos que se presentaron ante el foro primario —cual implica que, en apelación los litigantes no pueden añadir prueba que no fue presentada oportunamente ante el foro primario, ni esbozar nuevas teorías—, (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) determinar si el derecho se aplicó de forma correcta.
>
> *Segarra Rivera v. International Shipping Agency, Inc.*, *supra,* pág. 981.

Por utilizar los mismos criterios de evaluación, los foros apelativos se encuentran en la misma posición que el tribunal de instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 116 (2015). Ahora bien, el Tribunal Supremo estableció que el estándar a seguir para revisar la denegatoria o concesión de una moción de sentencia sumaria es el siguiente:

> (1) [Q]ue el Tribunal de Apelaciones se encuentre en la misma posición del Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria, y que esta revisión sea *de novo*;
>
> (2) que el Tribunal de Apelaciones revise que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en las Reglas de Procedimiento Civil;
>
> (3) que el Tribunal de Apelaciones revise si en realidad existen hechos materiales en controversia y si existen debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y
>
> (4) si los hechos materiales realmente son incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho en la controversia.
>
> *Segarra Rivera v. International Shipping Agency, Inc.*, *supra*, pág. 982.

En armonía con lo anterior, la revisión del foro apelativo conlleva examinar *de novo* el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el tribunal de instancia y realizando todas las inferencias permisibles a su favor. *Birriel Colón v. Econo y otro*, *supra*, págs. 91-92.

El Tribunal Supremo de Puerto Rico ha reiterado que "[t]oda vez que la moción de sentencia sumaria evita la celebración de un juicio, las deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, presentados por las partes en apoyo de su contención, deben admitirse en evidencia en un juicio plenario". *Carpets & Rugs v. Tropical Reps*, 175 DPR 615,637 (2009); *Jusino et als. v. Walgreens*, 155 DPR 560, 577 (2001).

### C. *La Ley del Caso*

Es norma conocida en nuestro ordenamiento jurídico que "los derechos y obligaciones adjudicados en el ámbito judicial, mediante dictamen firme, constituyen la ley del caso." *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 8 (2016); *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005); *Mgmt. Adm. Servs. Corp. v. ELA*, 152 DPR 599, 606 (2000).

Cónsono con ello, esta figura no se limita a lo resuelto mediante sentencia, sino que aplica, además, a las órdenes y resoluciones emitidas por un tribunal, una vez estas advienen finales y firmes. Con el fin de velar por el trámite ordenado y pronto de los litigios, así como por la estabilidad y la certeza del derecho, un tribunal de instancia, como una cuestión de sana práctica y no como regla inviolable, debe resistirse a alterar sus pronunciamientos dentro de un mismo caso excepto cuando se convenza de que los mismos son erróneos. *Mgmt. Adm. Servs. Corp. v. ELA, supra,* pág. 607.

Sin embargo, cuando la ley del caso es errónea y puede causar una gran injusticia, puede emplearse una norma de derecho diferente. *Secretario del Trabajo v. Tribunal Superior*, 95 DPR 136, 140 (1967); *Rivera Robles v. Insurance Co. of Puerto Rico*, 103 DPR 91, 94-95 (1974).

A tales efectos, nuestro Más Alto Foro judicial ha dictado que:

> Más que un mandato invariable o inflexible, la doctrina recoge una costumbre deseable: las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales. De este modo, las partes en un litigio pueden, en lo posible, conducir su proceder en el pleito sobre unas directrices judiciales confiables y certeras.

*Mgmt. Adm. Servs., Corp. v. ELA, supra*, págs. 607-608.

En adición, ha expresado el Tribunal Supremo de Estados Unidos que esta doctrina "dirige la discreción del tribunal, no limita su poder." *Cacho Pérez v. Hatton Gotay y otros, supra,* pág. 9 (citando

a *Arizona v. California,* 460 U.S. 605, 618 (1983) (traducción suplida).

Como vimos, las determinaciones judiciales que constituyen la ley del caso incluyen todas aquellas cuestiones finales consideradas y decididas por el tribunal. Ahora bien, la doctrina de la ley del caso solo puede invocarse cuando exista una decisión final de la controversia en sus méritos. *Cacho Pérez v. Hatton Gotay y otros, supra,* pág. 9.

### D. *Teoría General de Contratos*

El Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 1 *et seq.*, según enmendado, codificó las disposiciones que rigen las obligaciones y los contratos. En nuestra jurisdicción, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil de 1930, 31 LPRA ant. sec. 2992. Sobre las obligaciones que nacen de los contratos, estas tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de estos. Art. 1044 del Código Civil de 1930, 31 LPRA ant. sec. 2994; *López v. González,* 163 DPR 275, 281 (2004); *Mercado, Quilichini v. UCPR,* 143 DPR 610, 627 (1997). Nuestro derecho reconoce el principio de libertad de contratación o autonomía contractual entre las partes. *Álvarez v. Rivera,* 165 DPR 1, 17 (2005).

El Art. 1207 del Código Civil de 1930, establece que, "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". 31 LPRA ant. sec. 3372. Así pues, los contratos serán obligatorios, cualquiera que sea la forma que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez. Art. 1230 del Código Civil de 1930, 31 LPRA ant. sec. 3451.

Para que un contrato sea válido, este debe contener el consentimiento de los contratantes, un objeto cierto y causa de la obligación que se establezca. Art. 1213 del Código Civil de 1930, 31 LPRA ant. sec. 3391. Por su parte, el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que han de constituir el contrato. Art. 1214 del Código Civil de 1930, 31 LPRA ant. sec. 3401.

Por consiguiente, los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil de 1930, 31 LPRA ant. sec. 3375. Una vez perfeccionado dicho contrato, éste tiene fuerza de ley entre las partes.

Asimismo, el contrato adolece de validez y eficacia cuando el consentimiento otorgado consiste en una declaración de voluntad libre de vicios. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 886 (2008). Lo anterior en virtud del Art. 1217 del Código Civil de 1930, que establece que el consentimiento será nulo cuando es prestado por error, violencia, intimidación o dolo. 31 LPRA ant. sec. 3404. Por tanto, los que contravengan sus obligaciones o incurran en dolo, negligencia, o morosidad en estás, quedan sujetos a la indemnización de daños y perjuicios causados. Art. 1054 del Código Civil de 1930, 31 LPRA ant. sec. 3018.

Es por lo anterior que, el acreedor de una obligación recíproca tiene la facultad de exigir el cumplimiento o la resolución de su obligación con los daños y perjuicios, así como el abono de intereses. Art. 1077 del Código Civil de 1930, 31 LPRA ant. sec. 3052.

### E. Contrato Mercantil

El Artículo 1 del Código de Comercio define a los comerciantes como aquellos que, teniendo la capacidad legal para ejercer el

comercio, se dedican habitualmente a él, en nombre propio y aquellas compañías, corporaciones y asociaciones mercantiles o industriales, que se constituyan con arreglo a la referida pieza legislativa o a las leyes especiales, y las corporaciones y compañías que se hayan organizado en el extranjero, también para fines mercantiles e industriales, y estén debidamente autorizadas para realizar negocios en Puerto Rico. 10 LPRA sec. 1001.

Por otro lado, el Artículo 82 del Código de Comercio establece que será de naturaleza mercantil "la compraventa de cosas muebles **para revenderlas**, bien en la misma forma que se compraron, o bien en otra diferente, **con ánimo de lucrarse en la reventa**." 10 LPRA sec. 1302 (énfasis nuestro).

Cónsono con lo anterior, el Máximo Foro judicial ha aclarado que para que una transacción se considere mercantil es necesario que se cumplan dos (2) requisitos: (1) que las personas que hayan concertado la transacción sean comerciantes; y, (2) que el propósito de la transacción sea mercantil. *Soc. Gananciales v. Paniagua Díaz*, 142DPR 98, 107-108 (1996); *Ramallo Brothers Printing, Inc. v. Ramis,* 133 DPR 36, 440 (1993); *Reece Corp. v. Ariela, Inc.,* 122 DPR 270, 277 (1988).

En adición, el Tribunal Supremo ha establecido que el peso de demostrar que la obligación es de naturaleza mercantil le corresponde a la parte que lo plantea. *Pescadería Rosas, Inc. v. Lozada*, 116 DPR 474, 481 (1985). Según ha señalado nuestro Más Alto Foro, "el elemento que distingue principalmente la compraventa mercantil de la civil [es] 'el doble propósito [del comprador] de revender ulteriormente las cosas compradas y de obtener un lucro.'" *Ramallo Brothers Printing, Inc. v. Ramis, supra,* pág. 440; *Reece Corp. v. Ariela, Inc., supra*, págs. 276-277.

Siendo así, "[a]l faltar esa intención o propósito, la compraventa carece del carácter mercantil que la distingue del

tráfico civil." *Reece Corp. v. Ariela, Inc., supra,* pág. 277; *Soc. Gananciales v. Paniagua Díaz, supra,* pág. 108.

Por otro lado, el Artículo 940 del Código de Comercio establece un término prescriptivo de cinco (5) años para las acciones en virtud del Código de Comercio que no tienen un plazo determinado para deducirse en juicio. 10 LPRA sec. 1902. Asimismo, que el referido plazo de prescripción será fatal, sin que contra este se de restitución. Artículo 939 del Código de Comercio, 10 LPRA sec. 1901. Nótese que la característica breve del plazo prescriptivo en materia mercantil, en comparación con los plazos prescriptivo en lo civil, responde a las exigencias particulares del tráfico comercial. *Ramallo Brothers Printing, Inc. v. Ramis, supra,* pág. 441.

**III**

Primeramente, evaluadas la *Oposición a "Solicitud de Sentencia Sumaria Parcial" de la Demandante y Moción de Sentencia Sumaria a Favor de PDMPI,* presentada por Palmas del Mar, y la *Oposición a SOLICITUD DE SENTENCIA SUMARIA,* presentada por Candelero, determinamos que ambas mociones cumplieron con los requisitos de forma que les exige la Regla 36 de Procedimiento Civil, *supra.* Lo anterior nos habilita para atender propiamente el error señalado en el recurso de *certiorari.*

En el presente caso, la parte peticionaria sostiene que el TPI abusó de su discreción y actuó contrario a derecho al denegar su solicitud de sentencia sumaria, ya que sostiene que el *Operating Agreement* en cuestión es un contrato mercantil, regido por el Código de Comercio bajo el cual la causa de acción, según plantea, se encuentra prescrita.

La parte peticionaria plantea que el TPI no atendió ni resolvió la controversia esbozada en la solicitud de sentencia sumaria de si el *Operating Agreement* es de naturaleza mercantil, en cuyo caso, aplicaría el Código de Comercio.

Ahora bien, nótese que, mediante la *Resolución* de 15 de octubre de 2024, y notificada el 17 de octubre de 2024, al denegar la solicitud de Palmas del Mar para que reconsiderara su denegatoria de desestimar el caso, el foro primario indicó que, **toda vez que el acuerdo se firmó bajo el Código Civil de 1930, es de aplicación el término de quince (15) años**. Sin embargo, expresó que, ya sea que aplique el término del Código Civil o el plazo provisto por el Código de Comercio, la demanda no se encontraba prescrita por cuanto entendió que, tras notificar a la parte peticionaria del alegado incumplimiento, la parte recurrida presentó en término su causa de acción. El razonamiento del foro *a quo* consistió en que, desde que Candelero solicitó el requerimiento a Palmas del Mar el 23 de enero de 2024, y esta no cumplió dentro de los diez (10) días siguientes, comenzó a transcurrir el término prescriptivo.

Establecido lo anterior, no surge del expediente alguna acción de la parte peticionaria en la que solicitó la revisión de la determinación del foro primario. Por consiguiente, la *Resolución* de 15 de octubre de 2024, y notificada el 17 de octubre de 2024, advino final y firme el 17 de noviembre de 2024, por lo que constituye la ley del caso.

Como vimos, la doctrina de la ley del caso aplica en toda determinación judicial, final y firme, de una controversia en sus méritos. *Cacho Pérez v. Hatton Gotay y otros, supra,* pág. 9. Asimismo, los tribunales deben resistirse a alterar los pronunciamientos dentro de un mismo caso excepto cuando se convenzan de que éstos son erróneos o puedan causar una gran injusticia, circunstancias bajo las que podrá emplearse una norma de derecho distinta. *Mgmt. Adm. Servs. Corp. v. ELA, supra,* pág. 607; *Secretario del Trabajo v. Tribunal Superior, supra,* pág. 140; *Rivera Robles v. Insurance Co. of Puerto Rico, supra,* págs. 94-95.

Somos del criterio que la determinación del foro primario sobre la aplicación del Código Civil de 1930 no es errónea. Todo lo contrario. Nos explicamos.

Ya vimos que el Código de Comercio establece que será mercantil aquella compraventa en la que el comprador tenga la intención de revender el objeto de la transacción, con el ánimo de generar algún lucro. 10 LPRA sec. 1302; *Soc. Gananciales v. Paniagua Díaz, supra,* págs. 107-108; *Ramallo Brothers Printing, Inc. v. Ramis, supra,* pág. 440; *Reece Corp. v. Ariela, Inc., supra,* pág. 277. Huérfana la transacción de dicha intención, la naturaleza de la misma será una civil, regida por las disposiciones del Código Civil. *Reece Corp. v. Ariela, Inc., supra*, pág. 277; *Soc. Gananciales v. Paniagua Díaz, supra,* pág. 108.

Surge del acuerdo suscrito entre las partes que la transacción hecha por Candelero fue con el fin de operar un centro ecuestre, no con el ánimo de recircular la propiedad en el mercado y generar con ello un lucro. Siendo así, no puede entenderse que la transacción entre las partes fue de naturaleza mercantil. Más bien, es de naturaleza civil y se rige por las disposiciones del Código Civil. Consecuentemente, por cuanto no se dispuso una norma de derecho errónea o patentemente injusta, no procede alterar la determinación del foro primario, sino sostenerla al palio de la doctrina de la ley del caso.

Finalmente, es menester recordar que los tribunales tienen discreción para conceder o no un petitorio de sentencia sumaria, ya que el mal uso de esta puede despojar a un litigante de su día en corte, lo cual coartaría su debido proceso de ley. *Roig Com. Bank v. Rosario Cirino, supra*, a la pág. 617. Es por ello por lo que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para

dilucidarla controversia que deban ser evaluados por el juzgador. *Segarra Rivera v. Int'l Shipping et al., supra,* a la pág. 980.

Como bien señaló el foro primario, en este caso el elemento credibilidad es esencial para dilucidar la controversia. Particularmente, debe proveérsele la oportunidad a la parte recurrida de demostrar, mediante prueba, el incumplimiento contractual alegado; mientras que la parte peticionaria debe tener la oportunidad de defenderse y probar que ha cumplido con sus obligaciones contractuales. Son, precisamente, las alegaciones contradictorias las razones por la que el TPI denegó disponer del caso por la vía sumaria.

En su denegatoria, el foro primario constó treinta y cuatro (34) hechos incontrovertidos. Luego de evaluada la prueba ante nos, acogemos los hechos incontrovertidos dispuestos por el TPI. Así pues, todo hecho incontrovertido identificado por el foro primario está sustentado en la prueba documental presentada por las partes.

Por otro lado, el foro *a quo* identificó quince (15) hechos en controversia. Nótese que, esencialmente, éstos corresponden a si Palmas del Mar ha incumplido sus obligaciones contractuales, y a si Candelero ha sufrido daños por causa de ésta. Luego de examinada la prueba documental, somos del criterio que los hechos en controversia no pueden ser justipreciados como asuntos de derecho ni resueltos únicamente con el análisis de la prueba documental, por lo que no es apropiada la disposición del presente caso por la vía sumaria.

Según expuesto anteriormente, el foro primario no podrá dictar sentencia sumaria cuando: "(1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no ha sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre hecho material y esencial, o (4) como cuestión de derecho no

proceda". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC.*, *supra*, pág. 335.

De igual forma, enfatizamos que no es aconsejable que se utilice el mecanismo de sentencia sumaria cuando hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial para dilucidar la controversia que deban ser evaluados por el juzgador. *Cruz, López v. Casa Bella y otros, supra*, 993-994; *Segarra Rivera v. Int'l Shipping Agency, Inc., supra*, pág. 980.

Por tanto, no se equivocó el foro *a quo* al denegar la solicitud de sentencia sumaria.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, se expide el auto de *certiorari* y se *confirma* la *Resolución.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones